FILED

August 3, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 3:36 PM



## COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | | |
|---|---|---|
| Michael MacDonald | ) | Docket No.: 2015-02-0077 |
| Employee, | ) | |
| v. | ) | State File No.: 24786-2015 |
| | ) | |
| Greene County Sheriff's Department | ) | Date of Injury: February 26, 2015 |
| Employer, | ) | |
| And | ) | Judge: Brian K. Addington |
| | ) | |
| Tri-State Claims Service | ) | |
| Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER GRANTING TEMPORARY MEDICAL AND DISABILITY BENEFITS (RECORD REVIEW ONLY)

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on July 28, 2015, upon the Request for Expedited Hearing filed by Michael MacDonald (Mr. MacDonald), the Employee, on June 24, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Greene County Sheriff's Department (GCSD), is obligated to provide medical and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. MacDonald is entitled to the requested benefits.

### ANALYSIS

#### Issues

1. *Whether Mr. MacDonald sustained an injury that arose primarily out of and in the course and scope of employment with GCSD.*
2. *Whether Mr. MacDonald's injury was idiopathic in nature.*
3. *Whether Mr. MacDonald was injured while engaged in a significant deviation*

1

*from his work duties.*

4. *Whether GCSD is obligated to pay for any past medical expenses and/or mileage expense.*
5. *Whether Mr. MacDonald is entitled to any past or future temporary total disability benefits, and if so, in what amount.*
6. *Whether Mr. MacDonald is entitled to any past or future temporary partial disability benefits, and if so, in what amount.*
7. *Whether GCSD has adequate grounds to deny Mr. MacDonald's claim based on the following affirmative defense: Voluntary participation in a non-work activity.*

## Evidence Submitted

The Court admitted into evidence the exhibits below:

1. Affidavit of Michael MacDonald, April 16, 2015;
2. Affidavit of Michael MacDonald, June 23, 2015;
3. First Report of Injury;
4. Wage Statement;[1]
5. Form C-23 Notice of Denial of Claim for Compensation;
6. Panel of Physicians;
7. Dr. Todd Christensen Letter, April 2, 2015;
8. Dr. Todd Christensen Letter, March 24, 2015;
9. Dr. Todd Christensen Letter, June 23, 2015;
10. Dr. Todd Christensen Letter, July 16, 2015;
11. PA Christopher Fleming Letter, October 14, 2014;
12. Medical Records: TMA Orthopedics (TMA); and,
13. Medical Records: Takoma Hospital (TAK).

The Court designated the following as the technical record:

- Request for Expedited Hearing, June 24, 2015
- Letter Attached to Request for Expedited Hearing-Attorney Jonathan Cave
- GCSD Response to Request for Expedited Hearing
- Dispute Certification Notice (DCN), May 15, 2015
- Dispute Certification Notice (DCN), July 21, 2015
- Letter Attached to DCN-Attorney Cave, July 21, 2015
- Petition for Benefit Determination (PBD), April 2, 2015.

---

[1] The provided Wage Statement itemizes Mr. MacDonald's wages for the 52-week period before the October 3, 2014 injury. This Wage Statement is appropriate and will be used to calculate any benefit owed for the February 26, 2015 injury, which is alleged to be a direct and natural consequence of the original October 2014 injury.

## History of Claim

Mr. MacDonald worked for GCSD as a Sheriff's Deputy when, on October 3, 2014, he responded to a call to a residence. (Exs. 1-2.) As Mr. MacDonald climbed a ladder to reach the attic over the residence's garage, he fell from the ladder and fractured his left ankle. *Id.* Dr. Todd Christensen at TMA provided authorized medical care for Mr. MacDonald's left ankle injury. After an MRI of the left ankle revealed a low grade sprain, bone contusion, and microfracture, Mr. MacDonald received conservative treatment. (Ex.13, p. 112.)

Dr. Christensen's physician's assistant (PA), Christopher Fleming, took Mr. MacDonald off work from October 6 through October 19, 2014. (Ex. 11.) He allowed Mr. MacDonald to return to light duty on October 20, 2014. Mr. MacDonald's attorney acknowledged in his June 21, 2015 letter that GCSD accommodated Mr. MacDonald's restrictions with a dispatcher job "at same or equal pay until February 26, 2015."

On February 26, 2015, Mr. MacDonald stepped down from the front door of his home on his way to retrieve garbage cans when his left ankle "gave out." (Ex. 1.) Mr. MacDonald landed awkwardly on his right foot and fractured his right ankle. (Ex. 13, p. 18.) He received emergency care from Dr. Laura Lipscomb, who noted Mr. MacDonald's October 2014 left ankle injury and that he had "recently discontinued crutches 1-2 weeks ago per orthopedics." (Ex. 13, p. 53.)

After undergoing an "ankle dislocation reduction using traction" and receiving a splint, Mr. MacDonald saw Dr. Christensen for his right-ankle injury the next day, February 27, 2015. (Ex. 13, p. 57.) The provided C-42 physician panel established that Mr. MacDonald chose Dr. Christensen as his authorized provider with regard to the February 26, 2015 accident. (Ex. 6.) Mr. MacDonald signed his panel selection on April 10, 2015. *Id.*

Dr. Christensen recommended an open reduction internal fixation (ORIF) surgery after his initial visit with Mr. MacDonald. (Ex. 13, p. 20.) Moreover, Dr. Christensen confined Mr. MacDonald to a wheelchair, "so he is not putting any weight on the right lower extremity, and due to his instability, I do not want him to trust too unduly on the left lower extremity until we are sure it is doing well with therapy." *Id.*

Dr. Christensen performed the right ankle ORIF surgery four days later on March 2, 2015. (Ex. 12, p. 24.) During his post-operative visit with Dr. Christensen on March 17, 2015, Mr. MacDonald could "ambulate with wheel chair." (Ex. 12, p. 1.) Dr. Christensen placed his right ankle in a fracture boot and allowed "toe-touch weightbearing for four more weeks." (Ex. 12, Page 3.) He also ordered physical therapy. *Id.*

3

Regarding causation, Dr. Christensen stated on March 24, 2015, that "it is reasonable to say that the work-related left ankle injury on October 3, 2014, was a contributing factor to the new injury of the right ankle that occurred on February 26, 2015." (Ex. 8.) In a second letter dated April 2, 2015, the doctor elaborated as follows: "I can say to a reasonable degree of medical certainty, considering all causes, that Mr. MacDonald's injury of his right ankle that occurred on February 26th, 2015, was a direct and natural consequence from the work-related left ankle injury of October 3rd, 2014." (Ex. 7.)

On April 14, 2015, Tri-State Claims, CGSD's insurance carrier, filed a C-23 Notice of Denial with the Court, asserting that the "injury did not occur due to course and scope of employment. [Injured Worker] was at home when incident occurred." The Notice indicated that Tri-State Claims denied Mr. MacDonald's claim on March 12, 2015, and notified Mr. MacDonald and his physicians of the denial that same day.

As of May 12, 2015, Dr. Christensen allowed Mr. MacDonald to return to work with restrictions, but GCSD did not accommodate the restrictions. (Ex. 2.) In a letter dated June 23, 2015, Dr. Christensen returned Mr. MacDonald to work at full duty on June 29, 2015. (Ex. 9.) However, on July 16, 2015, Dr. Christensen assigned new restrictions of "sitting or standing limited to 30 minutes at a time and with a 30 minute break afterwards." (Ex. 10.) There is no indication in the available medical records that Dr. Christensen has placed Mr. MacDonald at maximum medical improvement (MMI) for his injuries. Mr. MacDonald has not returned to work since the February 26, 2015 accident. (Ex. 2.)

The Wage Statement indicated that Mr. MacDonald earned wages for the 52-week period prior to the October 3, 2014 work injury sufficient to entitle him to an average weekly wage of $678.69 and a compensation rate of $452.48. (Ex. 4.)

Mr. MacDonald filed a PBD on April 2, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation and the Mediation Specialist filed the DCN on May 27, 2015. Mr. MacDonald filed a REH by file review only on June 24, 2015, regarding the February 26, 2015 event. Mr. MacDonald filed a second REH with regard to the October 3, 2014 work injury on July 21, 2015. The Court consolidated the cases under the February 26, 2015 docket number.

**Mr. MacDonald's Contentions**

Mr. MacDonald asserts that he is entitled to workers' compensation benefits associated with his right-ankle injury, which arose as a direct and natural consequence of his compensable left-ankle injury from October 3, 2014. There is no evidence of either an independent intervening cause or negligence on his part to undercut his argument. The medical records and causation assessments of his authorized physician, Dr.

4

Christensen, support his position. He is entitled to past and ongoing temporary disability benefits in accordance with Dr. Christensen's restrictions. Dr. Christensen has not placed him at MMI for his injuries.

## CGSD's Contentions

CGSD contends that the February 26, 2015 injury did not arise out of Mr. MacDonald's employment, and did not occur within the course and scope of his employment. It owes no temporary disability benefits, given the fact that Dr. Christensen returned him to work with no restrictions on June 29, 2015.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

### Factual Findings

Mr. MacDonald injured his left ankle while acting in the course and scope of his employment as a sheriff's deputy with GCSD on October 3, 2014. He received conservative authorized medical treatment with Dr. Christensen. Thereafter, Mr. MacDonald injured his right ankle during a fall at home on February 26, 2015, which resulted from weakness in his injured left ankle. He chose Dr. Christensen from GCSD's panel of physicians as his authorized provider for the right-ankle injury. Dr. Christensen performed ORIF surgery on Mr. MacDonald's right ankle on March 2, 2015. Dr. Christensen determined that "Mr. MacDonald's injury of his right ankle that occurred on February 26th, 2015, was a direct and natural consequence from the work-related left ankle injury of October 3rd, 2014." GCSD accommodated Mr. MacDonald's work restrictions after the October 2014 work injury and paid him his normal wages until the February 26, 2015 accident. Mr. MacDonald was wheelchair-bound and unable to work until May 12, 2015, when Dr. MacDonald issued work restrictions that GCSD did not accommodate. Dr. Christensen returned Mr. MacDonald to full duty from June 29, 2015, through July 16, 2015, at which point he again issued work restrictions. Mr. MacDonald

5

is not at MMI, nor has he returned to work. Mr. MacDonald's applicable average weekly wage is $678.69, and his compensation rate is $452.48.

*Application of Law to Facts*

The Workers' Compensation Law defines "injury" and "personal injury" to mean an injury by accident "arising primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence[.] *Id.* An injury "arises primarily out of and in the course and scope of employment" only if it has been shown "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

Tennessee has long recognized the "direct and natural consequences rule." As the Tennessee Supreme Court stated, "a subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the 'direct and natural result' of a compensable injury." *Rogers v. Shaw*, 813 S.W.2d 397, 399-400 (Tenn. 1991). Consequently, "all the medical consequences and sequelae that flow from the primary injury are compensable." *Id.* at 400.

In the case at bar, the authorized treating physician, Dr. Christensen, determined that "Mr. MacDonald's injury of his right ankle that occurred on February 26th, 2015, was a direct and natural consequence from the work-related left ankle injury of October 3rd, 2014." The Court finds that, by virtue of Dr. Christensen's opinion, Mr. MacDonald has satisfied his obligation of establishing that his right-ankle injury of February 26, 2015, is a direct and natural consequence of the underlying October 3, 2014 work-related injury. Consequently, Mr. MacDonald is entitled to the medical treatment Dr. Christensen has provided and continues to provide for his right-ankle injury.

Moreover, the Court finds that Mr. MacDonald is entitled to temporary disability benefits with regard to his right-ankle injury. The Tennessee Supreme Court held that, in order to make out a prima facie case of entitlement to temporary total disability, an employee must prove that he was "(1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and his inability to work; and (3) the duration of that period of disability. Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery." *Simpson v. Satterfield*, 564 S.W.2d 953, 954 (Tenn. 1978). The Court finds that Mr. MacDonald satisfies the *Simpson* requirements for temporary total disability benefits for the period of February 26 through May 11, 2015.

6

Temporary partial disability benefits are payable, prior to the injured worker reaching MMI, when the treating physician returns the employee to work with restrictions that the employer cannot accommodate, or when an employer accommodates the restrictions, but pays the worker less each week than the employee's pre-injury average weekly wage. Temporary partial disability benefits are paid at the rate of 2/3 of the difference between the pre-injury average weekly wage and what the injured worker is able to earn in his injured condition. Tenn. Code Ann. § 50-6-207(2). If the employer cannot accommodate the worker's restrictions, and the employee is unable to otherwise earn wages at a different job, then the temporary partial disability rate may equate to 2/3 of the injured worker's pre-injury average weekly wage.

The Court finds that Mr. MacDonald is entitled to temporary total disability benefits at his compensation rate of $452.48 from February 26, 2015, through May 11, 2015, in the amount of $4,783.36; temporary partial disability benefits at the rate of $452.48 from May 12, 2015, through June 28, 2015, in the amount of $3,102.72; and temporary partial disability benefits at the rate of $452.48 from July 16, 2015, to the date of this Order in the amount of $1,046.24, as well as ongoing temporary disability benefits.

The Court finds that Mr. MacDonald is likely to prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. MacDonald is entitled to authorized medical treatment for his right ankle injury in accordance with the directions of his authorized treating physician, Dr. Christensen.

2. Mr. MacDonald is entitled to past temporary disability benefits in the total amount of $8,932.32. Furthermore, Mr. MacDonald is entitled to ongoing temporary disability benefits in accordance with the work status determinations of Dr. Christensen.

3. This matter is set for Initial Hearing on September 25, 2015, at 2:00 p.m. Eastern Time.

**ENTERED this 31st day of July 2015.**

**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

7

Initial Hearing:

An Initial Hearing has been set with **Judge Addington, Court of Workers' Compensation Claims. You must call 865-594-6538 or toll free at 855-543-5044 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited

8

Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 3rd day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jonathan Cave, Esq. | | | X | wc@cavelawfirm.com |
| Thomas Kilday, Esq. | | | X | tkilday@milligancoleman.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**